STATE of North Dakota, Plaintiff
and Appellee,

v.

Paul TURNOVEC, Defendant
and Appellant.

Crim. No. 943.

Supreme Court of North Dakota.

Nov. 30, 1983.

Alan Duppler, State's Atty., Stanton, for plaintiff and appellee; submitted on briefs.

Thomas D. McGurren, Bismarck, for defendant and appellant; submitted on briefs.

SAND, Justice.

The defendant, Paul Turnovec, appealed from a judgment of conviction [1] finding him guilty of leaving the scene of a property damage accident without providing the required information in violation of North Dakota Century Code § 39–08–08, which provides as follows:

"The driver of any vehicle involved in an accident resulting only in damage to highway fixtures or other property shall take reasonable steps to locate and notify the owner or person in charge of such property of such fact and of his name and address and of the registration num-

---

1. The conviction resulted from a bench trial but the judgment erroneously stated that the defendant "pled guilty to" the charge. The sentence, on the judgment of conviction, imposed the sentence of three days' imprisonment but suspended it on the condition that Turnovec pay costs of $50.00 and committed no criminal vio-

lation for a year. The transcript, however, states the judge imposed a fine of $50.00 and a five-day jail sentence which was suspended on the condition that the fine be paid and that Turnovec commit no criminal violation of the motor vehicle code for one year.

ber of the vehicle he is driving and shall upon request and if available exhibit his operator's or chauffeur's license and shall make report of such accident when and as required in section ·39–08–09."

The criminal complaint,[2] dated 16 February 1983, was signed by Mitchell J. Rumple but the only witness that testified was Lyle Yeager. The complaint stated:

"Mitchell J. Rumple, being first duly sworn, says that on or about the 1st day of January, 1983, at Beulah, North Dakota, in said County, the above named defendant did commit the crime of LEAVING THE SCENE OF A PROPERTY DAMAGE ACCIDENT WITHOUT PROVIDING REQUIRED INFORMATION

2. This is the second complaint. The first complaint or citation (a copy of which was in appellee's brief) was dismissed on the motion of the State. The original complaint states that Turno-

in violation of Section 39–08–08 N.D.C.C., committed as follows, to-wit:

That the said defendant did then and there leave the scene of an accident involving damage to property without taking reasonable steps to locate and notify the owner or person in charge of such property of such fact and of his name and address and of the registration number of the vehicle he was driving. On the above date defendant struck a fence owned by Mr. Lyle Yeager causing damage to said fence. Defendant then left the scene of the accident but was stopped by Mr. Yeager. Defendant did not provide Mr. Yeager with his name or address. Mr. Yeager did obtain the registration number of defendant's vehicle by

vec, on the 1 day of 1 1983, 0137 a.m. (The figure of 013 is clear but the 7 or 0 is not.). At the bottom of the form is the following:

"  .    .    .    .    .    .    .    .    .    .    .    .    .    .    .

"THE STATE OF NORTH DAKOTA TO THE ABOVE NAMED DEFENDANT:

"You are hereby summoned to appear at the time and place designated below to answer to the charge above indicated to be made against you."

"Appearance Before: Juvenile Commissioner – County Justice – County Court – City Magistrate

Dated this __3__ day of __1__ 1982.

Officer S/ MITCHELL J. RUMPLE

(A.M.)

County Court House    1    10    83    9:00 P.M.
                (Month) (Day) (Year) (Time)"

"PROMISE TO APPEAR – I hereby consent and promise to appear at the time and place specified in the above summons, the receipt of a copy of which is hereby acknowledged, and I expressly waive earlier hearing.

"Dated this __1__ day of __3__ 1983          DEFENDANT  X S/ PAUL TURNOVEC        "

The defendant, pursuant to the traffic ticket and the original complaint was charged with having violated NDCC § 39–08–05. The State, on 9 February 1983, moved to have the charge dismissed on the grounds that the defendant was charged under a wrong statute. The order granting the motion was dated 14 February 1983. The order of dismissal contained the following:

"IT IS HEREBY ORDERED, That the within and foregoing charge be and is hereby dismissed (without) (with) prejudice."

Neither "without" nor "with" was crossed out or underlined.

The second complaint concluded with the following:

"Subscribed and sworn to before me this 16th day of February, 1983.

S/ O. A. SCHULZ by DONNA BUCHMANN
O. A. Schulz                                     County Judge
                                                 Co. Magistrate"

Does this mean that Donna Buchmann acted as a substitute in place of O.A. Schulz or on his behalf? May the authority to administer oaths be delegated to some other person who does not have that authority per se?

looking at the vehicle's license plates. Mr. Yeager told defendant to wait at the scene because the police had been called. Mr. Yeager then went to recapture his horse which had escaped through the hole in the fence caused by defendant. While Mr. Yeager was doing this defendant left the scene and did not contact Mr. Yeager again until January 3, 1983, which was after the Mercer County Sheriff's Office had contacted defendant about the accident. Defendant has admitted to being the driver of the vehicle when the accident happened."

Yeager testified substantially as follows:

Yeager left his home to celebrate New Year's Eve and returned at about one o'clock when he noticed a pickup in the neighbor's yard. The pickup backed up and pulled in the driveway and then backed up again (apparently to turn around). He drove ahead again and ran over two corner posts. He turned around and then came back out. Yeager then stepped out in the road. Paul Turnovec, the driver of the vehicle, stopped the pickup so that the driver's side window was alongside Yeager. Yeager asked Turnovec who was going to pay for the posts. Turnovec started to take off but Yeager reached in the window and grabbed Turnovec by the shirt. Yeager said his wife had the police on the phone and Turnovec then stopped. Yeager again asked Turnovec who was going to pay for the posts and Turnovec said he would and to let him go. Yeager asked the driver of the vehicle his name and Turnovec "mumbled out his name, but all I [Yeager] could understand was Paul." Turnovec did not show his driver's license or any other identification. In the meantime, Yeager's horse ran out of the gate and Yeager went after the horse and caught it. As Yeager was returning, Turnovec "was going ... leaving the scene"—driving away. Yeager took down the license number of the pickup. Turnovec, in approximately two weeks, called Yeager and apologized and, by check, paid Yeager $50.00. Yeager had

estimated the damage to be about $30.00. During this time Yeager did not ask Turnovec for his driver's license or its equivalent.

The statute basically requires the driver causing the damage to "... take reasonable steps to locate and notify the owner or persons in charge of such property ..." of the damage "and of his name and address and of the registration number of the vehicle he is driving ...."

The key language is that the driver "shall take reasonable steps." The question then is, did the driver, Turnovec, in this instance and under the circumstances fail to take reasonable steps to accomplish that which is specifically required by the statute. The question may also be stated: Were the actions of Turnovec after the accident justified?

The accident occurred after midnight at approximately 1:00 a.m. Yeager did not identify himself as the owner of the property that was damaged. There was no evidence introduced that Turnovec knew that Yeager was the owner of the property. Keeping in mind that the burden of proof is on the State, and that proof in a criminal case is beyond a reasonable doubt, we do not believe the evidence presented gave the trial court any justification to conclude from such testimony that Turnovec should have known Yeager was the owner of the damaged property. Maybe the court, the complainant, Rumple, and the State's Attorney knew that but the evidence presented did not establish that Yeager was the owner of the damaged property. At no time, according to testimony at the trial, did Yeager inform Turnovec that he was the owner of the property.

The evidence does not establish what kind of lights were available in the area at the time. Initially, the defendant stopped his pickup when Yeager stepped out on the road. After Yeager asked the defendant who was going to pay for the posts, the defendant started to "take off." Yeager

then grabbed Turnovec by the shirt and said his wife had the sheriff on the phone. Turnovec stopped and, after a further exchange took place, Yeager again asked who was going to pay for the posts, whereupon the defendant said that he would and to let him go. Under these circumstances we can readily understand that a reasonable, prudent individual would be anxious to get away from the place. The transcript does not include the tone of the voice that was used, except Yeager said that when he asked the defendant's name the defendant "mumbled out his name but all he could understand was Paul." Nevertheless, the evidence clearly established that an unpleasant atmosphere existed from which the ordinary person would like to get away. Under the circumstances, Turnovec could have assumed that Yeager was a meddler or a person trying to create trouble and, as a result, he (Turnovec) was anxious to get away.

The statute does not state that the person causing the damage shall immediately notify the owner, etc., but only requires reasonable steps. The defendant, at the scene of the accident on 1 January 1983, stated to Yeager that he would pay for the damage.

Yeager also testified that he made no effort to get in touch with Turnovec because the police told him "I (Yeager) probably have to settle in court, so I was just waiting for them." This strongly suggested that Yeager either knew from what Turnovec told him where Turnovec could be located, or that Yeager had acquired this information otherwise since the encounter.

The complaint states that Turnovec, on 3 January 1983, again contacted Yeager regarding the accident, which was after the sheriff's office contacted the defendant about the accident. According to this, the sheriff's office had contacted Turnovec prior to January 3 or on January 3, but definitely prior to the dismissal of the first complaint and the lodging of the second complaint. This statement is not in harmony with Yeager's testimony that Turnovec

didn't get in touch with him until about two weeks after the accident. A few direct questions in a few instances would have been very beneficial, and so would the testimony of the complainant, who was not called as a witness by the State.

The record, except for the check which gives Beulah as his residence, leaves no clue regarding the residence of Turnovec.

The record contains numerous errors. The first complaint had a variance of dates. The complaint or citation alleges the violation occurred on "1 day of 1 1983"; the appearance stated, "Dated this 3 day of 1 1983," which would be the 3 day of January 1983; and the promise to appear on the bottom of the complaint was dated "this 1 day of 3 1983," which would be the 1 day of March. The order of dismissal does not state if it was (with) or (without) prejudice), even though those statements were on the form. A second complaint stated, "Subscribed and sworn to before me this 16th day of February 1983, O.A. Schulz by Donna Buchmann, Co. Magistrate." O.A. Schulz was the county judge. (We are not aware that the authority to administer oaths may be done in someone else's name.) The transcript has the judge imposing the sentence to be five days in jail and $50.00 fine with the jail sentence suspended on payment of fine for one year if no violation of the motor vehicle code. However, the judgment of conviction states that the sentence is three days in jail, $50.00 costs, with the jail sentence suspended upon payment of the costs for one year provided no violation. Also, the judgment of conviction states the defendant pleaded guilty, whereas the record shows it was a bench trial.

The difference on dates, coupled with the statement in the second complaint that Turnovec did not contact Yeager again until January 3, 1983, suggests that Turnovec had contact with the sheriff's office and it also suggests that the sheriff's office may have given similar advice to Turnovec as it did to Yeager that this is a matter now in the courts. However, the sheriff, or members of his office, were not called as wit-

nesses. It is unusual for the complainant not to be called as a witness.

■ Each of the foregoing, alone, would not justify a reversal of the conviction, but, coupled with an exceptionally bleak record, which also becomes suspect because of the other errors, and the circumstances under which Turnovec left the scene of the accident a reversal is warranted. Without weighing the evidence, we conclude that it does not establish that Turnovec failed to take reasonable steps to satisfy the statutory requirements. We also believe that the furtherance of justice requires a reversal of the conviction based on the totality of circumstances. The defendant is not required to prove that he did not commit the offense. The burden of proof is on the State, which it has not met. Accordingly, we reverse the judgment of conviction.

ERICKSTAD, C.J., and VANDE WALLE, PEDERSON and GIERKE, JJ., concur.